1 | ANDREW W. TWIETMEYER SBN: 254436
email: awt@twietmeyerlaw.com
2 | THE LAW OFFICE OF
ANDREW W. TWIETMEYER
3 | 10780 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025
4 | Tel:   (310)909-7138
Fax:   (323)988-7171
5 | Attorney for Petitioner, BENEDICT COSENTINO

FILED
CLERK, U.S. DISTRICT COURT

MAY 2 0 2013

DISTRICT OF CALIFORNIA
DEPUTY

6

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

EDCV13-0912 P(OPx)

11 | BENEDICT COSENTINO,

| Case No.:

12 | Petitioner,

| **PETITION TO COMPEL
ARBITRATION (9 U.S.C. § 4)**

13 | vs.

14 | PECHANGA BAND OF LUISENO
MISSION INDIANS; PECHANGA
15 | GAMING COMMISSION; and DOES 1
through 10, inclusive.

16 | Respondents.

17

18

**COPY**

19

20

1

---

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over the instant case pursuant to 28 U.S.C. § 1331; 25 U.S.C. § 2701, et. seq. and Federal Common Law.

2.    Save for the arbitration provision at issue in this Petition, this case presents controlling questions of federal law under which this Court has subject matter jurisdiction.

3.    The principal dispute between the parties concerns: a) whether the Pechanga Gaming Commission has expressly and unequivocally waived its sovereign immunity and consented to arbitration and the application of California tort law under Section 10.2(d) of the Tribal-State Compact between the State of California and the Pechanga Band of Luiseno Mission Indians (the "Tribal-State Compact"); and b) whether the Pechanga Band has violated, and continues to violate the sections 2710(d)(1)(C); (d) (2)(C); and (d)(3)(C)(5) of the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et. seq. (the "IGRA"), and section 10.2(d)(i) and (ii) of the Tribal-State Compact by drafting and seeking to enforce its Tort Liability Ordinance to bar Mr. Cosentino's arbitration claims against the Pechanga Gaming Commission.

4.    Resolution of those questions requires review and interpretation of the IGRA, and Federal Common Law, the Tribal-State Compact and the Pechanga Gaming Ordinance.

5.    As set forth in greater detail below, the Tribal-State Compact was created

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

1  pursuant to federal statute.  <u>See</u> 25 U.S.C. § 2710(d)(3).   The Tribal-State Compact

2  was reviewed by the United States Secretary of the Interior and became effective only

3  upon the Secretary's approval published in the Federal Register.  25 U.S.C. § 2710(d)

4  (3)(B).   Accordingly, the Tribal-State compact is a creation of the IGRA, which

5  prescribes its effectiveness and scope.   <u>See</u> <u>Cabazon Band of Mission Indians v.</u>

6  <u>Wilson</u>, 124 F.3d 1050, 1056 (9th Cir. 1997) ("The Compacts quite clearly are a

7  creation of federal law; moreover, IGRA prescribes the permissible scope of

8  compacts.")

9     6.   Similarly, the Pechanga Gaming Ordinance, which established the Pechanga

10 Gaming Commission, is a creation of the IGRA, which prescribes its scope and

11 content.  <u>See</u> 25 U.S.C. 2710.

12    7.   The controversy between the parties underlying this Petition arises from Mr.

13 Cosentino's allegation that the Pechanga Gaming Commission revoked his class A

14 gaming license in retaliation for Mr. Cosentino's assistance (as a confidential

15 informant) to state and federal law enforcement in identifying and prosecuting

16 individuals engaged in organized crime at the Pechanga Resort and Casino (the

17 "Pechanga Casino").

18    8.   The Congressionally-declared statutory purpose of the IGRA includes

19 providing "a statutory basis for the regulation of gaming by an Indian tribe adequate

20 to shield it from organized crime and other corrupting influences, to ensure that the

1  Indian tribe is the primary beneficiary of the gaming operation, and to assure that

2  gaming is conducted fairly and honestly by both the operator and players." 25 U.S.C.

3  § 2702(2).

4      9.   Section 10.2(d) of the Tribal-State Compact serves that congressionally-

5  declared purpose to the extent it creates an arbitral forum wherein the Pechanga Band

6  may be held accountable for injuries to patrons and persons entering on the Tribe's

7  land to provide services to the Tribe—including the injuries alleged in this case

8  which arise from the baseless, retaliatory, and legally-unauthorized acts of the

9  Pechanga Gaming Commission.

10      10.   Accordingly, this case presents compelling questions of Federal importance

11  as it requires interpretation of the scope of section 10.2(d) of the Tribal-State

12  Compact and the use of section 10.2(d) to incentivize vigilant, accountable, and

13  corruption-free Tribal oversight of gaming enterprises. See 25 U.S.C. § 2702(2).

14      11.   For the foregoing reasons, this Court has federal question jurisdiction under

15  28 U.S.C. Section 1331 and federal common law.

16      12.   Venue is proper in the Central District of California because Respondents

17  are located in the Central District; and because all or a substantial part of the events

18  giving rise to this action occurred in the Central District, and because the Tribal-State

19  Compact calls for arbitration in the Central District.

20

## THE PARTIES

13.   Petitioner Benedict Cosentino is an individual who resides in the City of Temecula in the County of Riverside California.  Mr. Cosentino is a former employee of the Pechanga Casino where he worked as a table games dealer until the Commission revoked his Class A Gaming license, thereby compelling the Pechanga Casino to terminate Mr. Cosentino's employment in the spring of 2011.

14.   Respondent the Pechanga Band of Luiseño Mission Indians (the "Pechanga Band" or the "Tribe"), is a federally-recognized Indian Tribe residing in Riverside County.

15.   Respondent the Pechanga Gaming Commission (hereinafter, the "Commission") is a five-member elected body that was formed pursuant to Section 4 of the Pechanga Gaming Ordinance of 1992 (with the review and approval of the National Indian Gaming Commission); and section 6.4.1 of the Tribal-State Compact. The Commission is a governmental subdivision of the Pechanga Band.

16.   The true names and capacities, whether individual, corporate, associate, or otherwise of Respondents named DOES 1 through 10, inclusive, are unknown to Mr. Cosentino, who therefore identifies such Respondents by such fictitious names.  Mr. Cosentino is informed and believes, and on that basis alleges, that Respondents DOES 1 through 10 inclusive, are in some manner responsible for the unlawful acts alleged herein.  Mr. Cosentino will seek leave of this Court to amend his Petition to

1   show their true names and capacities once they are discovered.

2

3   ## FACTS AND LAW SUPPORTING THE PETITION

4   **A.   The Tribal-State Compact**

5   17.   The Pechanga Casino is a Native American tribal gaming casino owned and

6   managed by the Pechanga Band.

7   18.   The Pechanga Casino conducts "class III gaming" as that term is defined at

8   25 U.S.C. § 2703(8).

9   19.   IGRA section 2710(d)(1)(C) provides that "Class III gaming activities shall

10   be lawful on Indian lands only if such activities are...conducted in conformance with

11   a Tribal-State compact entered into by the Indian tribe and the State under paragraph

12   [2710(d)](3) that is in effect." 25 U.S.C. § 2710(d)(1)(C).

13   20.   IGRA section 2710(d)(3) provides:

14

15   (A) Any Indian tribe having jurisdiction over the Indian lands upon

16   which a class III gaming activity is being conducted, or is to be

17   conducted, shall request the State in which such lands are located to

18   enter into negotiations for the purpose of entering into a Tribal-State

19   compact governing the conduct of gaming activities. Upon receiving

20   such a request, the State shall negotiate with the Indian tribe in good

1    faith to enter into such a compact.

2    (B) Any State and any Indian tribe may enter into a Tribal-State

3    compact governing gaming activities on the Indian lands of the Indian

4    tribe, but such compact shall take effect only when notice of approval

5    by the [United States] Secretary [of the Interior] of such compact has

6    been published by the Secretary in the Federal Register.

7

8    (C) Any Tribal-State compact negotiated under subparagraph (A) may

9    include provisions relating to--

10

11    (i) the application of the criminal and civil laws and regulations of the

12    Indian tribe or the State that are directly related to, and necessary for,

13    the licensing and regulation of such activity;

14

15    (ii) the allocation of criminal and civil jurisdiction between the State

16    and the Indian tribe necessary for the enforcement of such laws and

17    regulations;

18        . . .

19    (vi) standards for the operation of such activity and maintenance of the

20    gaming facility, including licensing; and

7

1        (vii) <u>any other subjects that are directly related to the operation of</u>

2        <u>gaming activities.</u>

3    25 U.S.C. § 2710(d)(3) (emphasis added.)

4

5        21.   On or about September 10, 1999, pursuant to IGRA section 2710(d)(1)(C),

6    the Pechanga Band entered a Tribal-State Gaming Compact with the state of

7    California.   The Pechanga Band and the State later amended the aforementioned

8    Tribal-State Gaming Compact in August 2006.   The Tribal-State Gaming Compact

9    between the State of California and the Pechanga Band of Luiseno Mission Indians,

10   as amended, is herein referred to as the "Tribal-State Compact."

11       22.   After executing the Tribal-State Compact, the State of California and the

12   Tribe submitted the Tribal-State Compact to the United States Secretary of the

13   Interior for the Secretary's approval pursuant to 25 U.S.C. 2710(d)(8).

14       23.   On or about December 13, 2007, the Secretary of the Interior approved the

15   Tribal-State Compact and published notice of such approval in the Federal Register

16   pursuant to 25 U.S.C. section 2710(d)(8)(D).   <u>See</u> 72 Fed. Reg. 71,940 (Dec. 19,

17   2007).

18       24.   Under 25 U.S.C. section 2710(d)(2)(C), the Pechanga Casino's gaming

19   activities are fully subject to the terms and conditions of the Tribal-State Compact.

20       25.   Under 25 U.S.C. section 2710(d)(3)(C)(5), the Pechanga Band must

8

1   regulate class III gaming on its lands consistent with, and no less stringent than, the

2   requirements of the Tribal-State Compact.

3   **B.**   **The Pechanga Band's Waiver of Sovereign Immunity and Consent to**

4       **Arbitration in the Tribal Compact.**

5       26.   The Pechanga Band has agreed in the Tribal-State Compact to waive its

6   sovereign immunity and consent to arbitrate all claims for bodily injury, property

7   damage, and personal injury arising out of, connected with, or relating to the

8   operation of the Gaming Facility or the Gaming Activities, including, but not limited

9   to, claims brought by persons entering on to the Tribe's land to provide services to the

10  Pechanga Casino.

11      27.   Specifically, section 10.2(d) of the Tribal-State Compact provides as

12  follows:

13      (i) The Tribe shall obtain and maintain a commercial general liability

14      insurance policy consistent with industry standards for non-tribal

15      casinos and underwritten by an insurer with an A.M. Best rating of A or

16      higher ("Policy") which provides coverage of no less than ten million

17      dollars ($10,000,000.00) per occurrence for bodily injury, property

18      damage, and personal injury arising out of, connected with, or relating

19      to the operation of the Gaming Facility or Gaming Activities.  In order

20      to effectuate the insurance coverage, the Tribe shall waive its right to

9

1   assert sovereign immunity up to the limits   of   the Policy   in

2   accordance with the tribal ordinance referenced in subdivision (d)(ii)

3   below in connection with any claim for bodily injury, property damage,

4   or personal injury arising out of, connected with, or relating to the

5   operation of the Gaming Facility, including, but not limited to, injuries

6   resulting from entry onto the Tribe's land for purposes of patronizing

7   the Gaming Facility or providing goods or services to the Gaming

8   Facility; provided, however, that nothing herein requires the Tribe to

9   agree to liability for punitive damages or to waive its right to assert

10  sovereign immunity in connection therewith.   The Policy shall

11  acknowledge that the Tribe has waived its right to assert sovereign

12  immunity for the purpose of arbitration of those claims up to the limits

13  of the Policy referred to above and for the purpose of enforcement of

14  any ensuing award or judgement and shall include an endorsement

15  providing that the insurer shall not invoke tribal sovereign immunity up

16  to the limits of the Policy; however, such endorsement or

17  acknowledgement shall not be deemed to waive or otherwise limit the

18  Tribe's sovereign immunity beyond the Policy limits.

19

20  (ii) The Tribe shall maintain in continuous force its Tort Liability

1    Ordinance which shall, prior to the effective date of this Amendment

2    and at all times hereafter, continuously provide at least the following:

3

4    (A) That California tort law shall govern all claims for bodily injury,

5    property damage, or personal injury arising out of, connected with, or

6    relating to the operation of the Gaming Facility or the Gaming

7    Activities, including, but not limited to, injuries resulting from entry on

8    the Tribe's land for purposes of patronizing the Gaming Facility or

9    providing goods or services to the Gaming Facility, provided that any

10   and all laws governing punitive damages need not be a part of the

11   Ordinance.

12   (B) That the Tribe waives its right to assert sovereign immunity with

13   respect to the arbitration and court review of such claims but only up to

14   the limits of the Policy; provided, however, such waiver shall not be

15   deemed to waive or otherwise limit the Tribe's sovereign immunity

16   beyond the Policy limits.

17

18   (C) That the Tribe consents to binding arbitration before a single

19   arbitrator, who shall be a retired judge, in accordance with the

20   comprehensive arbitration rules and procedures of JAMS (or if those

1    rules no longer exist, the closest equivalent) to the extent of the limits

2    of the Policy, that discovery in the arbitration proceedings shall be

3    governed by section 1283.05 of the California Code of Civil Procedure,

4    that the Tribe shall initially bear the cost of JAMS and the arbitrator,

5    but the arbitrator may award costs to the prevailing party not to exceed

6    those allowable in a suit in California Superior Court, and that any

7    party dissatisfied with the award of the arbitrator may at the party's

8    election invoke the JAMS Optional Arbitration Appeal Procedure (or if

9    those rules no longer exist, the closest equivalent), provided that the

10   party making such election must bear all costs and expenses of JAMS

11   and the arbitrators associated with the Appeal Procedure regardless of

12   the outcome.   To effectuate its consent to the foregoing arbitration

13   procedure, the Tribe shall, in the exercise of its sovereignty, waive its

14   right to assert its sovereign immunity in connection with the arbitrator's

15   jurisdiction and in any action brought in the United States District

16   Court where the Tribe's Gaming Facility is located and the Ninth

17   Circuit of Appeals (and any successor court), or, if the federal court

18   declines to hear the action, in any action brought in the courts of the

19   State of California that are located in Riverside County, including

20   courts of appeal, to (1) enforce the parties' obligation to arbitrate, (2)

1  confirm, correct, modify, or vacate the arbitral award rendered in the

2  arbitration, or (3) enforce or execute a judgement based upon the

3  award.   The Tribe agrees not to assert, and will waive, any defense

4  alleging improper venue or forum non conveniens as to such state

5  courts.

6        . . .

7  (iv) <u>Failure to comply with this Section 10.2, subdivisions (d)(i), (d)</u>

8  <u>(ii), or (d)(iii), shall be deemed a material breach of the Compact.</u>

9  (Tribal-State Compact § 10.2(d) [emphasis added], Declaration of Andrew W.

10 Twietmeyer in Support of Petition to Compel Arbitration ("Twietmeyer Decl.") ¶ 2,

11 pages 11-14, Exh. "A.")

12    28.   The Tribal-State Compact defines the term "Gaming Facility" at section 2.8

13 as follows:

14    "Gaming Facility" or "Facility" means any building in which Class III

15    gaming activities or gaming operations occur, or in which the business

16    records, receipts, or other funds of the gaming operation are maintained

17    (but excluding offsite facilities primarily dedicated to storage of those

18    records, and financial institutions), and all rooms, buildings, and areas,

19    including parking lots and walkways, a principal purpose of which is to

20    serve the activities of the Gaming Operation, provided that nothing

13

1    herein prevents the conduct of Class II gaming (as defined under

2    IGRA) therein."

3    (Tribal-State Compact § 2.8, Twietmeyer Decl. ¶ 2, page 7, Exh. "A.")

4

5    29.   The Tribal-State Compact defines the term "Gaming Activities" as follows:

6    "'Gaming Activities' means the Class III gaming activities authorized under this

7    Gaming Compact." (Tribal-State Compact §2.4, Twietmeyer Decl. ¶ 2, page 6, Exh.

8    "A.")

9    30.   The Tribal-State Compact defines the term "Tribe" at section 2.21 as

10   follows: "'Tribe' means the Pechanga Band of Luiseno Mission Indians, a federally-

11   recognized Indian tribe, or an authorized official or agency thereof." (Tribal-State

12   Compact § 2.21 [emphasis added], Twietmeyer Decl. ¶ 2, page 8, Exh. "A.")

13   **C.    The Commission**

14   31.   The Commission was established by section 4(a) of the Pechanga Gaming

15   Ordinance of 1992 with the approval of the Chairman of the National Indian Gaming

16   Commission pursuant to 25 U.S.C. § 2710(e).

17   32.   Pechanga Gaming Ordinance section 4(a) states,

18

19   There is established by the Band hereby a Commission, acting under

20

14

**PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)**

1   the authority of the Band, to be known as the Pechanga Gaming

2   Commission.  The Gaming Commission shall be composed of five (5)

3   members of the Pechanga General Membership, all of whom shall be

4   elected by the General Membership.

5   (Pechanga Gaming Ordinance § 4(a), Twietmeyer Decl. ¶ 3, page 16, Exh.

6   "B.")

7

8      33.   Section 4 of the Pechanga gaming ordinance charges the Commission with

9   the power and the duty to issue licenses to all key employees at the Pechanga Casino.

10  (See Pechanga Gaming Ordinance § 4(j), Twietmeyer Decl.  ¶ 3, page 17, Exh. "B.")

11     34.   The Tribal-State Compact requires at section 6.4.1 that all persons in any

12  way connected with the Pechanga Casino including all gaming employees must be

13  licensed by a Tribal Gaming Agency. (See Tribal State Compact § 6.4.1, Twietmeyer

14  Decl. ¶ 2, page 9, Exh. "A.")

15     35.   The Commission is the Tribal Agency referred to at section 6.4.1 of the

16  Tribal-State Compact.

17     36.   Accordingly, as a governmental subdivision and authorized agency acting

18  under the authority of the Pechanga Band, the Commission falls squarely within the

19  Tribal-State Compact's definition of the term 'Tribe.'   (See Tribal-State Compact §

20  2.21, Twietmeyer Decl. ¶ 2, page 8, Exh. "A.")

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

37.   Therefore, the Commission has waived its sovereign immunity and consented to arbitration under section 10.2(d) of the Tribal-State Compact. (See Tribal-State Compact §§ 10.2(d)(i); 10.2(d)(ii)(B); 10.2(d)(ii)(C), Twietmeyer Decl. ¶ 2, pages 11-13, Exh. "A.")

**D.**   **The Pechanga Band Violates Section 10.2(d)(ii) of the Tribal-State Compact by Adopting a Tort Liability Ordinance That Purports to Unilaterally Bar Certain Claims That Fall within the Tribe's Broad Waiver of Sovereign Immunity.**

38.   In or about February 2008, pursuant to section 10.2(d)(ii) of the Tribal-State Compact, the Pechanga Band adopted its Pechanga Gaming Facility Tort Liability Act of 2008 (the "Tort Liability Ordinance.")

39.   The Tort Liability Ordinance provides at section 5(b) in relevant part that:

> Tort claims against the Tribe which are cognizable under this Act shall be brought against the Tribe's Gaming Operation and may be pursued solely through the Tribal Dispute Resolution Process as outlined in this Act and, if not satisfied thereby, through arbitration as provided herein. The Tribe has not waived its immunity for any purpose including, but not limited to arbitration or enforcement of arbitration awards, except as specifically provided herein. No claim of any kind is authorized

16

1      under this Act against the Pechanga Band, the Pechanga Gaming

2      Commission, the Pechanga Development Corporation or their

3      respective officials.

4  (Tort Liability Ordinance § 5(b), Twietmeyer Decl. ¶ 4, page 22, Exh. "C.")

5

6      40.    By section 5(b) of the Tort Liability Ordinance, the Pechanga Band thus

7  purports to unilaterally bar claims against the Commission that fall within the Tribe's

8  broad waiver of sovereign immunity and the Tribe's consent to arbitration under

9  section 10.2(d) of the Tribal-State Compact.

10     41.    The Tort Liability Ordinance provides at section 5(d) that:

11

12     [n]o claim shall be pursued or sustained pursuant to this Act if a

13     concurrent or alternate action seeking damages for injury arising from

14     the same incident has been filed in any other forum or venue. If such an

15     action is filed in any other forum or venue during the pendency of a

16     claim pursuant to this Act, the claim pursuant to this Act is and shall be

17     considered to have been abandoned and shall not be eligible thereafter

18     for an award of any kind.  Abandoned claims shall not be eligible for

19     arbitration.  This provision shall not be construed to confer any right to

20     bring an action in any other forum, nor as acquiescence by the Tribe or

1    its Gaming Operation to a claim of jurisdiction by a court or agency of

2    any other sovereign.

3  (Tort Liability Ordinance § 5(d), Twietmeyer Decl. ¶ 4, pages 22-23, Exh.

4  "C.")

5    42.    By section 5(d) of the Tort Liability Ordinance, the Pechanga Band purports

6  to unilaterally bar claims that fall within the Tribe's broad waiver of sovereign

7  immunity and the Tribe's consent to arbitration under section 10.2(d) of the Tribal-

8  State Compact if the claimant has sued another party for the same injury in another

9  venue.

10    43.    Sections 5(b) and 5(d) of the Tort Liability Ordinance thus violate section

11  10.2(d)(ii) of the Tribal-State Compact which explicitly requires that the Pechanga

12  Band's Tort Liability Ordinance provide that the Tribe (which, under section 2.21 of

13  the Tribal-State Compact, includes the Commission) waives its right to assert

14  sovereign immunity with respect to the arbitration and court review of "all claims for

15  bodily injury, property damage, or personal injury arising out of, connected with, or

16  relating to the operation of the Gaming Facility or the Gaming Activities." (Tribal-

17  State Compact § 10.2(d)(ii)(A) [emphasis added]; see also §§ 2.21; and 10.2(d)(ii)

18  (B), Twietmeyer Decl. ¶ 2, pages 8, 12, Exh. "A.")

19    44.    Likewise sections 5(b) and 5(d) of the Tort Liability Ordinance violate

20  section 10.2(d)(ii)(C) of the Tribal-State Compact which explicitly requires that the

1   Pechanga Band's Tort Liability Ordinance provide that "the <u>Tribe</u> [which includes the

2   Commission under Tribal-State Compact section 2.21] consents to binding arbitration

3   before a single arbitrator, who shall be a retired judge, in accordance with the

4   comprehensive arbitration rules and procedures of JAMS...." (Tribal-State Compact §

5   10.2(d)(ii)(C) [emphasis added], Twietmeyer Decl. ¶ 2, pages 12-13, Exh. "A.")

6       45.   Because sections 5(b) and 5(d) of the Tort Liability Ordinance fail to

7   conform with, and are less stringent than the requirements of Tribal-State Compact

8   section 10.2(d), the Tort Liability Ordinance violates 25 U.S.C. sections 2710(d)(1)

9   (C); (d)(2)(C); and (d)(3)(C)(5).

10       46.   Moreover, the Tribe has drafted, and is now wielding, its Tort Liability

11   Ordinance to bar claims against the Commission in violation of Tribal-State Compact

12   sections 10.2(d)(i) and (ii).

13       47.   Therefore, from February 2008 to the present, the Tribe has been in material

14   breach of the Tribal-State Compact.  (<u>See</u> Tribal-State Compact §§ 10.2(d)(iv).)

15   **E.**   **<u>The Commission Wrongfully Revokes Mr. Cosentino's Gaming License</u>**

16   **<u>and Discloses His Identity As a Confidential Informant.</u>**

17       48.   Mr. Cosentino commenced employment with the Pechanga Casino in or

18   about April 2007.

19       49.   Shortly after starting work, Mr. Cosentino began to witness rampant

20   criminal activity taking place at the Pechanga Casino including an illegal online

1  casino being operated from the floor of the Pechanga Casino; loan sharking; buying

2  and selling jobs; extortion and bribery; comp fraud; rampant employee theft; and

3  collusion between corrupt dealers, supervisors and players.

4     50.   Mr. Cosentino reported what he saw to his licensing agent at the Pechanga

5  Casino and Mr. Cosentino was referred to internal contract investigators Walter

6  McKinney and Martin Hughes of McKinney Investigations, LLC.

7     51.   Mr. Cosentino is informed and believes, and on that basis alleges, that in or

8  about May 2007, the Pechanga Band hired McKinney Investigations to conduct an

9  internal investigation into criminal corruption associated with the Pechanga Casino.

10     52.   Mr. Hughes asked Mr. Cosentino if Mr. Cosentino would assist the

11  California Department of Justice as a confidential informant.  Mr. Cosentino agreed

12  to do so.

13     53.   Thereafter, Mr. Cosentino assisted the Department of Justice as an

14  informant on numerous successful criminal investigations.

15     54.   Through his assistance as a confidential informant, Mr. Cosentino risked his

16  personal safety, without compensation or reward, to help prevent theft from the

17  Pechanga Band and to protect the integrity of the Pechanga Casino's gaming

18  activities.

19     55.   On or about March 29, 2011, the Commission informed the Pechanga

20  Casino that it wished to meet with Mr. Cosentino at 11:00 a.m. on April 1, 2011.

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

56.   The Commission requested that the Pechanga Casino have Mr. Cosentino report to the Commission's offices at that time.

57.   The Commission did not inform Mr. Cosentino of the meeting.

58.   On March 31, 2011, the Pechanga Casino scheduled Mr. Cosentino to work a shift commencing at 10:00 a.m. on April 1, 2011.

59.   On April 1, 2011, at 11:00 a.m., Mr. Cosentino was at his assigned table working his scheduled shift with chips in play.

60.   The Pechanga Casino did not relieve him from his table.   Consequently he could not meet with the Commission.

61.   At approximately 11:25 a.m. another dealer finally relieved Mr. Cosentino and Mr. Cosentino's floor supervisor told Mr. Cosentino to report to the Pechanga Casino's table games office where Mr. Cosentino was informed that the Commission had suspended his license pending an investigation.   Mr. Cosentino was escorted from the Pechanga Casino and informed that he was barred from the premises until further notice.

62.   For the next month, Mr. Cosentino was left without an income and without any certainty as to whether he would be returning to his job at the Pechanga Casino.

63.   Finally, the Commission summoned Mr. Cosentino to its office for a May 11, 2011 meeting assuring him that he was not fired and that the Commission simply wanted to talk to him.

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

64.   Upon his arrival at that May 11, 2011 meeting, the Commission proceeded to interrogate Mr. Cosentino for over an hour about Mr. Cosentino's assistance to McKinney Investigations and the Department of Justice as a confidential informant.

65.   On May 13, 2011, Commissioner William Ramos telephoned Mr. Cosentino and told Mr. Cosentino that, if Mr. Cosentino would not resign from his employment at the Pechanga Casino, the Commission would revoke Mr. Cosentino's gaming license—effectively preventing Mr. Cosentino from ever getting another job in any tribal casino.

66.   Mr. Ramos also stated that the Commission had received an email from the Pechanga Casino explaining that the Pechanga Casino had not relieved Mr. Cosentino from his table at 11:00 a.m. on April 1, 2011, thus causing him to miss the meeting.

67.   Mr. Cosentino stated that he had done nothing wrong, and he refused to resign.

68.   On or about May 25, 2011, the Commission sent Mr. Cosentino a letter informing him that his license was revoked.

69.   The letter did not provide (and the Respondents have never provided) Mr. Cosentino with any reason why the Commission revoked his gaming license.

70.   As a result of the Commission's revocation of Mr. Cosentino's license, the Pechanga Casino was required to terminate Mr. Cosentino's employment. (See Tribal-State Compact § 6.4.1, Twietmeyer Decl. ¶ 2, page 9, Exh. "A"); see also 25

1  U.S.C. §§ 2710(b)(2)(F)(ii)(I) and 2710(d)(1)(A)(ii).

2      71.   On or about March 11, 2012, almost one year after the Commission revoked

3  Mr. Cosentino's gaming license, McKinney Investigations was invited to present the

4  results of its internal investigation of criminal corruption associated with the

5  Pechanga Casino to the general membership of the Pechanga Band.   During that

6  presentation (without disclosing Mr. Cosentino's identity) McKinney Investigations

7  informed the general membership of the Commission's baseless revocation of Mr.

8  Cosentino's gaming license.

9      72.   Mr. Cosentino is informed and believes, and on that basis alleges, that the

10  Chairwoman of the Commission, Ms. Stella Fuller, then rose to speak and repeatedly

11  identified Mr. Cosentino by name to the shock and dismay of the audience.

12      73.   Mr. Cosentino is informed and believes, and on that basis alleges, that Ms.

13  Fuller resigned from the Commission the day after McKinney Investigations's

14  presentation, and that she did so under pressure from the Pechanga Band.

15      74.   On or about March 16, 2012, the Commission presented Mr. Cosentino with

16  a letter stating that it had reconsidered the revocation of his license and that his

17  license is now no longer considered to be revoked.

18      75.   Nevertheless, the Pechanga Casino has not re-hired Mr. Cosentino and he

19  cannot secure employment at any other casino because when he interviews for such a

20  position and is asked why he left the Pechanga Casino he must truthfully state that he

1  was terminated because his license was revoked—effectively ending any such job

2  interview.

3      76.   The Commission, thus, took away Mr. Cosentino's livelihood and

4  effectively robbed him of his lawful occupation as a table games dealer--a trade to

5  which he had devoted 13 years of his working life.

6      77.   Moreover, by exposing Mr. Cosentino's identity as a Department of Justice

7  confidential informant, the Commission has left Mr. Cosentino in fear for his

8  personal safety and the welfare of his young child.

9  **F.**     **Mr. Cosentino States Claims for Personal Injury and Property Damage**

10          **against the "Gaming Operation" Arising out of, Connected with, and**

11          **Relating to the Gaming Facility and Gaming Activities.**

12      78.   On March 25, 2013 Mr. Cosentino filed a state civil action Entitled

13  Cosentino vs. Fuller, et. al., Riverside Superior Court civil case No MCC 1300396

14  (the "Civil Suit").

15      79.   The Civil Suit alleges causes of action against five current and former

16  members of the Commission (each in their individual capacity) for injury to Mr.

17  Cosentino's person and his property for the Commissioners' baseless, retaliatory, and

18  legally-unauthorized revocation of Mr. Cosentino's Gaming license, and the

19  Commissioners' intentional or negligent disclosure of Mr. Cosentino's identity as a

20  Department of Justice confidential informant.

**PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)**

80.   The Civil Suit states causes of action for Intentional and Negligent Interference with Prospective Economic Advantage; Common Law Intentional Interference with Mr. Cosentino's Right to Pursue a Lawful Occupation; Interference with Mr. Cosentino's Rights to Free Speech and to Pursuit of a Lawful Occupation in Violation of California <u>Civil Code</u> section 52.1; and Intentional and Negligent Infliction of Emotional Distress.

81.   Mr. Cosentino did not name the Commission or the Pechanga Band as defendants in his civil complaint because he anticipated that both parties would assert sovereign immunity to shield themselves from civil suit.

82.   Instead, on March 26, 2013, pursuant to section 10.2(d)(ii)(D) of the Tribal-State Compact, and section 10 of the Tort Liability Ordinance, Mr. Cosentino's attorney, acting on Mr. Cosentino's behalf, sent a Notice of Claims to the Pechanga Band's Claims Administrator and the Pechanga General Council stating the same causes of action and the same facts as Mr. Cosentino stated against the individual defendants in his Civil Action.   (See Notice of Claims, Twietmeyer ("Twietmeyer Decl.") ¶ 4, Exh. "C.")

83.   But for the operation of the Gaming Facility and the Gaming Activities, Mr. Cosentino could never have been employed as a table games dealer by the Pechanga Band.

84.   But for the operation of Gaming Facility and the Gaming Activities, the

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

1    Commission would not exist.

2      85.    Accordingly, each of Mr. Cosentino's claims of injury inflicted by the

3    Commission arises out of, is connected with, and relates to the operation of the

4    Gaming Facility and the Gaming Activities.

5      86.    Therefore, Mr. Cosentino's claims fall within the scope of the Pechanga

6    Band's waiver of sovereignty and consent to arbitration under the Tribal-State

7    Compact. (See Tribal-State Compact § 10.2(d)(ii)(A) and (B), Twietmeyer Decl. ¶ 2,

8    page 12, Exh. "A.")

9      87.    In an effort to strictly comply with the procedural requirements of section

10   5(b) of the Tort Liability Ordinance, Mr. Cosentino's Notice of Claims is stated

11   against the "Gaming Operation." (See Tort Liability Ordinance § 5(b); see also id. §

12   3(i) (defining the term "Gaming Operation" as "the Tribe's governmental project

13   which offers and operates Class III gaming activities, whether exclusively or

14   otherwise, and which project shares all aspects of the sovereign immunity of the

15   Tribe.") (Tort Liability Ordinance §§ 3(i) and 5(b), Twietmeyer Decl. ¶ 4, pages 21-

16   22, Exh. "C.")

17     88.    Mr. Cosentino's Notice of Claims notes that the Commission is a

18   governmental subdivision of the Pechanga Band and is part of the "Gaming

19   Operation" and the "Tribe" as those terms are defined at Section 3(i) of the Tort

20   Liability Ordinance and section 2.21 of the Tribal-State Compact respectively (See

1   Notice of Claims, Twietmeyer Decl. ¶ 5, pages 30 and 32, Exh. "D.")

2       89.   Mr. Cosentino's Notice of Claims also notes Mr. Cosentino's objections to

3   sections 5(b) and 5(d) of the Tort Liability Ordinance because those sections purport

4   to bar claims against the Pechanga Gaming Commission and other entities and

5   officials that fall within the scope the Tribe's waiver of sovereign immunity and

6   consent to arbitration under the Tribal-State Compact.   (See Notice of Claims,

7   Twietmeyer Decl. ¶ 5, page 30, Exh. "D.")

8

9   **G.     The Pechanga Band Refuses to Arbitrate Mr. Cosentino's Claims.**

10       90.   By letter dated April 9, 2013, Pechanga's Claims Administrator responded

11   to Mr. Cosentino's attorney.  That letter states in relevant part as follows:

12

13       After a careful review of the contents [of the Notice of Claims] it is

14       clear that all of your client's perceived grievances described therein are

15       directed towards and take exception to alleged actions of the Pechanga

16       Gaming Commission and/or individual Gaming Commissioners.

17       As this filing is not related to nor does it allege any tortious actions on

18       the part of The Pechanga Resort & Casino, the Gaming Operation of

19       the Pechanga Band of Luiseno Mission Indians, this matter is not

20       cognizable under the Gaming Facility's *Tort Liability Act.*

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

1    Further, as your submission identifies the alleged tortfeasors as the

2    Pechanga Gaming Commission and its individual Gaming

3    Commissioners, please be advised that your submission requesting

4    compensation via the Tribal Dispute Resolution Process provided by

5    the Gaming Facility's *Tort Liability Act* is not eligible to be filed as a

6    Claim and is hereby rejected pursuant to Section 5(b) of said Act

7    (Pechanga Claims Administrator Letter of April 9, 2013, Twietmeyer Decl. ¶ 6, page

8    60, Exh. "E" [italics in original].)

9

10   91.   On April 22, 2013, Mr. Cosentino's attorney responded to the Claims

11   Administrator and Pechanga General Counsel again explaining that:

12

13   [T]he Compact broadly defines the term "Tribe" in section 2.21 as

14   follows: "Tribe" means the Pechanga Band of Luiseno Mission Indians,

15   a federally-recognized Indian tribe, or an authorized official or agency

16   thereof."   The Commission plainly falls within the definition of the

17   term "Tribe," and the Pechanga Band's attempt to unilaterally exclude

18   the Commission from the purview of the Tort Liability Ordinance is a

19   violation of Compact section 10.2(d)(ii)(B). "Having consented to

20   waive its tribal sovereign immunity in the Compact, the Tribe cannot,

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

1   in drafting [section 5(a)[sic] of its Tort Liability Ordinance], render its

2   obligations totally illusory by retaining the sole and unfettered

3   discretion to determine whether a claimant has complied with the

4   procedural requirements of its regulations." See Campo Band of

5   Mission Indians v. Superior Court, 137 Cal.App.4th 175, 184-85

6   (2006).

7

8   Accordingly, Mr. Cosentino can only interpret your rejection of his

9   claims as a denial and hereby requests Arbitration pursuant to Section

10   12(c)(i) of the Tort Liability Ordinance.

11   (Request for Arbitration of April 22, 2013, Twietmeyer Decl. ¶ 7,  page 62, Exh. "F.")

12

13   92.   By letter dated April 26, 2013, Pechanga's Claims Administrator responded

14   to Mr. Cosentino's Request for Arbitration stating:

15   Although you state in your demand that you interpret the rejection of

16   your client's Notice of Claim as a "denial", as opposed to a rejection

17   due to the fact that your client's claims are not cognizable under the

18   Tort Liability Act, the fact remains that this matter did not qualify and

19   therefore never did enter into the Tribe's Dispute Resolution Process.

20   Therefore any further processes described in the Tort Liability Act

1    likewise do not apply.

2    As previously advised in my letter of April 9, 2013, since your client's

3    grievances are not related to nor allege any tortious actions on the part

4    of The Pechanga Resort & Casino, the Gaming Operation of the

5    Pechanga Band of Luiseno Mission Indians, this matter is not

6    cognizable under the Gaming Facility's *Tort Liability Act*. Any and all

7    remedies described in the *Tort Liability Act* pertain only to the Gaming

8    Facility and are not available for redress of grievances against

9    individual elected officials of the Pechanga Tribe. Accordingly, please

10   be advised that your request for arbitration are hereby rejected.

11

12   Additionally since the date of submission of the Notice of Claim in this

13   matter on March 26, 2013, I have come to find out that one day prior to

14   that, on March 25, 2013, you filed a lawsuit in the Superior Court of

15   the State of California against the same Gaming Commissioners

16   seeking compensation for the exact same grievances. [The remainder

17   of the letter quotes section 5(d) of the Tort Liability Ordinance in its

18   entirety.]

19   (Pechanga Claims Administrator Letter of April 26, 2013, Twietmeyer Decl. ¶ 8,

20   pages 92-93, Exh. "G.").

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

1

2  93.    Accordingly, despite the requirements of the Tribal-State Compact, the

3  Pechanga Band has unequivocally refused to arbitrate Mr. Cosentino's claims.

4  94.    Mr. Cosentino has exhausted any and all tribal remedies set forth in the Tort

5  Liability Act.

6  95.    No previous application has been made for the Order or relief sought by this

7  Petition.

8  96.    Pursuant to section 10.2(d)(ii)(C) of the Tribal-State Compact, Mr.

9  Cosentino's only recourse is to seek an order in this Court compelling the Pechanga

10  Band and the Commission to arbitrate Mr. Cosentino's claims, or, if this Court

11  declines to hear this action, to proceed by seeking such an order from the Riverside

12  County Superior Court. (See Tribal-State Compact § 10.2(d)(ii)(C), Twietmeyer Decl.

13  ¶ 2, pages 12-13, Exh. "A.")

14  **H.**    **The Court Should Order Respondents to Arbitrate Mr. Cosentino's**

15      **Claims Pursuant to 9 U.S.C. § 4.**

16  97.    Title 9 section 4 of the United States Code provides that:

17

18      A party aggrieved by the alleged failure, neglect, or refusal of another

19      to arbitrate under a written agreement for arbitration may petition any

20      United States district court which, save for such agreement, would

31

1    have jurisdiction under Title 28 [28 USCS §§ 1 et. seq.], in a civil

2    action or in admiralty of the subject matter of a suit arising out of the

3    controversy between the parties, for an order directing that such

4    arbitration proceed in the manner provided for in such agreement.

5    (9 U.S.C. § 4.)

6

7    98.    Indian Gaming under Tribal-State Compacts such as the Tribal-State

8    Compact at issue in this dispute is an economic activity that involves 'commerce'

9    under Title 9 section 2 of the United States Code. The Tribal-State Compact

10   "significantly affects interstate commerce both in terms of equipment and service

11   vendors and the attraction of interstate gaming customers.   Accordingly, the FAA

12   applies to permit enforcement of the parties agreement to arbitrate." Wisconsin v.

13   Ho-Chunk Nation, 478 F.Supp2d 1093 (W.D. Wis., 2007).

14   99.    Because the Tribal-State compact affects commerce, the arbitration

15   provisions contained within the Tribal-State Compact are "valid, irrevocable, and

16   enforceable" within the meaning of 9 U.S.C. Section 2.

17   100. "Valid, irrevocable, and enforceable" arbitration agreements may be

18   enforced in this Court by means of "an order directing that such arbitration proceed in

19   the manner provided for in such agreement." 9 U.S.C. § 4

20   101. As an individual who entered on to the Tribe's land to provide services to

PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)

1    the Gaming Facility, Mr. Cosentino is an intended third-party beneficiary of Tribal-

2    State Compact section 10.2(d).   (See Tribal-State Compact § 10.2(d)(i)-(ii)(A),

3    Twietmeyer Decl. ¶ 2, pages 20-21, Exh. "A.")

4        102. Mr. Cosentino has sought in good faith to notice claims and request

5    arbitration pursuant to section 10.2(d) of the Tribal-State Compact and the Pechanga

6    Band's Tort Liability Ordinance.

7        103. The Pechanga Band has violated and continues to violate section 10.2(d) of

8    the Tribal-State Compact by drafting its Tort Liability Ordinance to bar claims that

9    fall within the broad waiver of sovereign immunity and consent to arbitration that the

10   Pechanga Band agreed to in section 10.2(d).

11       104. The Pechanga Band has violated and continues to violate section 10.2(d) of

12   the Tribal-State Compact by unequivocally refusing to arbitrate Mr. Cosentino's

13   claims.

14       105. Mr. Cosentino has exhausted all remedies available to him at law and in

15   equity to seek redress for his grievances.

16   ///

17   ///

18   ///

19

20

**PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)**

# **PRAYER FOR RELIEF**

WHEREFORE, Mr. Cosentino prays:

A. That this Court make and enter an Order directing that:

    1.    Arbitration between Mr. Cosentino and Respondents proceed in the manner provided for in the Tribal-State Compact attached to and incorporated by reference in this Petition; and

    2.    that the issues raised in Mr. Cosentino's Notice of Claims and Request for Arbitration be determined by arbitration in accordance with the Tribal-State Compact; and

    3.    that Mr. Cosentino be awarded his costs in this proceeding; and

    4.    that the Court grant Mr. Cosentino any and all other relief to which he may justly be entitled.

Dated: May 17, 2013

ANDREW W. TWIETMEYER

By: _____

Andrew W. Twietmeyer
Attorney for Petitioner
BENEDICT COSENTINO

**PETITION TO COMPEL ARBITRATION (9 U.S.C. § 4)**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Oswald Parada.

The case number on all documents filed with the Court should read as follows:

## EDCV13- 912 R (OPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

===============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Andrew W. Twietmeyer (SBN: 254436)
The Law Office of Andrew W. Twietmeyer
10780 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | CASE NUMBER |
|---|---|
| BENEDICT COSENTINO | |
| PLAINTIFF(S) | EDCV13-0912 P (OPx) |
| v. | |
| PECHANGA BAND OF LUISENO MISSION INDIANS; PECHANGA GAMING COMMISSION, and DOES 1 through 10, inclusive. | |
| DEFENDANT(S). | **SUMMONS** |

TO:   DEFENDANT(S): Pechanga Band of Luiseno Mission Indians; and Pechanga Gaming Commission

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, __Andrew W. Twietmeyer_____, whose address is __10780 Santa Monica Blvd., suite 401, Los Angeles, CA 90025_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

MAY 2 0 2013

Clerk, U.S. District Court

Dated: _____

By: _____JULIE PRADO_____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

BENEDICT COSENTINO

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

PECHANGA BAND OF LUISENO MISSION INDIANS, PECHANGA GAMING COMMISSION and DOES 1 through 10, inclusive

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Andrew W. Twietmeyer (SBN: 254436)
The Law Office of Andrew W. Twietmeyer
10780 Santa Monica Blvd., Suite 401
Los Angeles, CA 90025

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☒ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Petition to Compel Arbitration under 9 U.S.C. § 4

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: EDCV13-0912

**AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.**

UNITE[] []ATES DISTRICT COURT, CENTRAL DIS []CT OF CALIFORNIA

### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
**Note:** In land condemnation cases, use the location of the tract of land involved[]

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____   DATE: May 17, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |